**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| INNERWORKINGS, INC., a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 20-cv-4407 |
| SARA HORN, WILLIAM THOMAS, CHARLES DICKER, DEBBIE HOKAMA, LORI IWATA, RAYMOND EVANS, EDWIN SHINSATO, CLAYTON ICHIKAWA, BLAKE STOLL, PATRICK BANE, SMART SOURCE, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**COMPLAINT**

Plaintiff, INNERWORKINGS, INC., by its undersigned attorneys, for its Complaint against defendants SARA HORN, WILLIAM THOMAS, CHARLES DICKER, DEBBIE HOKAMA, LORI IWATA, RAYMOND EVANS, EDWIN SHINSATO, CLAYTON ICHIKAWA, BLAKE STOLL, PATRICK BANE, and SMART SOURCE LLC, alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because Innerworkings' claims against Defendants under the federal Defend Trade Secrets Act, 18 U.S.C. § 1833, et seq., raise a federal claim. Innerworkings' remaining claims

fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the federal question that they form a part of the same case or controversy.

2.    Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims asserted herein occurred in this district.

## INTRODUCTION

3.    Defendant Sara Horn – a high ranking employee at Innerworkings – resigned from her position at Innerworkings on August 8, 2019 to work at Innerworkings' competitor, Smart Source. On February 14, 2020, Defendants Debbie Hokama, Lori Iwata, Mr. Evans, and Edwin Shinsato simultaneously resigned from their positions at Innerworkings to take substantially equivalent positions with Smart Source. Soon thereafter, defendants Clayton Ichikawa and Patrick Bane similarly resigned from Innerworkings to take substantially similar jobs at Smart Source. Defendants William Thomas and Charles Dicker also went to work for Smart Source. All of the individual defendants have utilized Innerworkings confidential, propriety information to solicit and cause Innerworkings' Hawaii-based customers to move all their business to Smart Source. Through their concerted, furtive, and illegal conduct, defendants engage in the wholesale breaches of numerous contractual and legal obligations to Innerworkings.

## THE PARTIES

4.    Plaintiff, Innerworkings, Inc. ("Innerworkings") is a Delaware corporation headquartered in Chicago, Illinois. Innerworkings is engaged in the business of providing marketing materials to clients across a wide range of industries, such as retail, financial services, hospitality, consumer packaged goods, non-profits, healthcare, pharmaceuticals, food and beverage, broadcasting and cable and transportation.

5.      Defendant Sara Horn ("Ms. Horn") is a citizen of the state of Florida, and on information and belief, is the Chief Operating Officer of Smart Source. Ms. Horn was formerly the VP of Operations at Innerworkings.

6.      Defendant William Thomas ("Mr. Thomas") is citizen of the state of Hawaii, and on information and belief, is a current employee of Smart Source. Mr. Thomas was formerly an account executive at Innerworkings.

7.      Defendant Charles Dicker ("Mr. Dicker") is a citizen of the state of Hawaii and on information and belief, is a current employee of Smart Source. Mr. Dicker was formerly employed at Innerworkings.

8.      Defendant Debbie Hokama ("Ms. Hokama") is a citizen of the state of Hawaii, and on information and belief, is a current employee of Smart Source. Ms. Hokama was formerly employed by Innerworkings.

9.      Defendant Lori Iwata ("Ms. Iwata") is a citizen of the state of Hawaii, and on information and belief, is a current employee of Smart Source. Ms. Iwata was formerly an operations manager at Innerworkings.

10.     Defendant Raymond Evans ("Mr. Evans") is a citizen of the state of Hawaii, and on information and belief, is a current employee of Smart Source. Mr. Evans was formerly employed at Innerworkings.

11.     Defendant Edwin Shinsato ("Mr. Shinsato") is a citizen of the state of Hawaii, and on information and belief, is a current employee of Smart Source. Mr. Shinsato was formerly a sales representative at Innerworkings.

12.     Defendant Clayton Ichikawa ("Mr. Ichikawa") is a citizen of the state of Hawaii, and on information and belief, is a current employee of Smart Source. Mr. Ichikawa was formerly employed at Innerworkings.

13.     Defendant Blake Stoll ("Mr. Stoll") is a citizen of the state of North Carolina, and on information and belief, is a current employee of Smart Source. Mr. Stoll was formerly employed at Innerworkings.

14.     Defendant Patrick Bane ("Mr. Bane") is a citizen of the state of California, and on information and belief, is a current employee of Smart Source. Mr. Bane was formerly employed at Innerworkings.

15.     Defendant Smart Source LLC ("Smart Source") is, on information and belief, a Delaware limited liability company with headquarters in New York, Boston, Atlanta, Los Angeles, Honolulu, Palm Beach, and San Jose.

## FACTS COMMON TO ALL COUNTS

16.      Ms. Horn, Mr. Thomas, Mr. Dicker, Ms. Hokama, Ms. Iwata, Mr. Evans, Mr. Shinsato, Mr. Ichikawa, Mr. Stoll, and Mr. Bane (collectively, the "Individual Defendants") were long-time employees of Innerworkings, each of who had responsibility in various capacities for handling Innerworkings' customers located in Hawaii.

17.     The Individual Defendants were part of a select group of employees at Innerworkings with whom Innerworkings entrusted with access to Innerworkings' trade secrets, confidential information and Innerworkings' long-term, near permanent business relationships with clients and other associates.

18.     The Individual Defendants would not have had access to Innerworkings trade secrets, confidential information, and long-term, near permanent business relationships but for

their employment with Innerworkings and promises to abide by the terms of the agreements they agreed to and signed with Innerworkings.

19.     The Individual Defendants also had access to Innerworkings' proprietary software containing information related to Innerworkings' customer relationships, purchase histories, and pricing information. Any competitor with access to this information would have an instant informational competitive advantage. Moreover, certain of the Individual Defendants had access to and knowledge of Innerworkings' strategic plans, client development, and pricing strategies.

20.     Ms. Horn held the highest position at Innerworkings among the Individual Defendants. Ms. Horn resigned from Innerworkings effective as of August 8, 2019 to work at Smart Source.

21.     After Ms. Horn left Innerworkings, she approached Innerworkings with a proposal for Smart Source to acquire Innerworkings' Hawaii-based customers. Innerworkings declined to sell its Hawaii-based customers to Smart Source.  Shortly thereafter, Ms. Horn went on a crusade to lure away specific Innerworkings employees who she knew serviced Innerworkings' Hawaiian customers. Those employees, in turn, could solicit the same Hawaii-based customers that Ms. Horn sought to acquire from Innerworkings.

22.     On February 14, 2020, Ms. Hokama, Ms. Iwata, Mr. Evans, and Mr. Shinsato simultaneously left Innerworkings to work for Smart Source. In the ensuing two months, Mr. Ichikawa and Mr. Bane also left Innerworkings to work for Smart Source.

23.     Mr. Thomas and Mr. Dicker had been terminated by Innerworkings on January 15, 2020, and each of them were subsequently employed at Smart Source.

24.     Within the space of few months, under the guidance of Ms. Horn, Smart Source had poached virtually all the personnel at Innerworkings responsible for Innerworkings' Hawaii-based customers.

### The Individual Defendants Agreed not to Misappropriate Innerworkings' Proprietary Information, and Agreed not to Compete with Innerworkings

25.     While working at Innerworkings, the Individual Defendants had access to certain of Innerworkings' proprietary information, including without limitation, customer lists, business forecasts, sales and merchandise and marketing plans, design details and specifications, and procurement requirements. All the Individual Defendants agreed pursuant to the Employee Innovations + Proprietary Rights Policy that said proprietary information would be kept in confidence and trust, both during their employment and after termination of such employment. Furthermore, all the Individual Defendants agreed that Innerworkings' proprietary information could not be used or disclosed without the written consent of Innerworkings.

26.     All of the Individual Defendants also agreed pursuant to the Employee Innovations + Proprietary Rights Policy not to compete with Innerworkings by working for any business that engages in a "competing business purpose," meaning "any goods or services of in-sourced and/or out-sourced print management services similar to or competitive with the Innerworkings business model . . . or any other activity directly competitive with the current business activities of [Innerworkings]." All of the Individual Defendants agreed not to compete with Innerworkings for *at least* twelve months after the termination of their employment.

27.     Despite having valid and enforceable confidentiality and non-compete agreements with Innerworkings, in rapid succession, all the Individual Defendants used their knowledge of Innerworkings' proprietary information to solicit and induce Innerworkings' Hawaii-based

customers to transfer their business away from Innerworkings and redirect their business to Smart Source.

28.     As a result of the Individual Defendants' tactics, within the span of three months, Smart Source was able to reduce Innerworkings' Hawaiian customer sales from roughly $450,000 per month to almost $0.

## COUNT I
### Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq*.)
### (Innerworkings v. Individual Defendants)

29.     Plaintiff restates and re-alleges paragraphs 1 through 28 of the Complaint as though fully alleged herein.

30.     The proprietary information taken by the Individual Defendants constitutes trade secrets under the Defend Trade Secrets Act.

31.     These trade secrets include, but are not limited to: (i) several hundred customer contacts and related customer sales information; (ii) purchasing and sales strategies; and (iii) pricing information and inventory costs.

32.     Innerworkings invested substantial time and resources to generate documents, data, sales information, and customer relationships that the Individual Defendants have utilized in their current employment at Smart Source. The information contained in these materials derives independent economic value by virtue of not being generally known to the public. Indeed, Smart Source had a negligible customer presence in Hawaii until the Individual Defendants misappropriated Innerworkings' proprietary information to generate sales for Smart Source.

33.     Innerworkings has kept this information sufficiently secret to give it a competitive advantage. It has taken affirmative measures to prevent others from acquiring it or using it by

means including, but not limited to, requiring the Individual Defendants to agree and adhere to several policies in place at Innerworkings and maintaining security procedures to protect the trade secrets. Access to Innerworkings' systems, including employee computers, phones and other devices is password protected, and certain databases are further limited and password protected as well. Innerworkings employees and contractors agree to a Computer Usage Policy in order to access Innerworkings' systems. Innerworkings and its service providers comply with the SOC 2 and ISO compliance standard with respect to certain of its systems as well. Moreover, Innerworkings requires confidentiality agreements with all its customers, suppliers, vendors, contractors and other third parties. Certain of Innerworkings' sales and marketing information and related documentation is marked confidential as well.

34.     Innerworkings communicated its trade secrets to the Individual Defendants in confidence and those defendants knew that Innerworkings intended its trade secrets to remain confidential. As such, the Individual Defendants promised to keep Innerworkings' trade secrets confidential, to use Innerworkings' trade secrets only on behalf of Innerworkings, and to return and discontinue use of Innerworkings' trade secrets when their employment with Innerworkings ended.

35.     The Individual Defendants have misappropriated the trade secrets by improper acquisition, unauthorized disclosure, or unauthorized use.

36.     Due to their positions working for a direct competitor of Innerworkings, and their possession of Innerworkings' trade secrets and proprietary information, there is a substantial likelihood that the Individual Defendants have disclosed or used, and will continue to use, Innerworkings' trade secrets.

37.     As a direct and proximate result of the Individual Defendants' unlawful conduct, Innerworkings has been irreparably damaged and the Individual Defendants have been unjustly enriched. This unjust enrichment includes value attributable to the misappropriated information, amounts the Individual Defendants saved in costs and development by using the misappropriated information, and increased productivity resulting from the use of the misappropriated information and increased market share. The exact amount of these damages and unjust enrichment is not presently ascertainable, but is believed to be in excess of several millions of dollars and increasing each month.

38.     The acts described above constituted willful and malicious misappropriation in that the Individual Defendants stole an alarming amount of proprietary information and did so with the deliberate intent to injure Innerworkings' business and improve their own. Accordingly, Innerworkings is entitled to an award of reasonable attorneys' fees under 18 U.S.C. § 1836 and exemplary damages under 18 U.S.C. § 1836.

39.     The Individual Defendants' conduct and continued use of Innerworkings' misappropriated trade secrets has caused, and unless enjoined by the Court, will continue to cause, great and irreparable injury to Innerworkings.

**WHEREFORE**, Innerworkings seeks a judgment in its favor and against defendants Sara Horn, William Thomas, Charles Dicker, Debbie Hokama, Lori Iwata, Raymond Evans, Edwin Shinsato, Clayton Ichikawa, Blake Stoll, and Patrick Bane, providing:

a.  Actual damages proximately caused by the Individual Defendants' misappropriation of trade secrets, including disgorgement of all ill-gotten gains and unjust enrichment, the exact amount to be proven at trial;

b. Exemplary damages as a result of the Individual Defendants' willful and malicious misappropriation of trade secrets;

c. Costs, including any forensic costs and reasonable attorneys' fees incurred by Innerworkings in bringing and prosecuting this action; and

d. For any other and further relief that the Court may deem just and proper.

.**COUNT II**
**Violation of the Illinois Trade Secrets Act (765 ILCS 1065/1, *et seq.*)**
**(Innerworkings v. Individual Defendants)**

40. Innerworkings incorporates the preceding allegations of this Complaint as if fully set forth herein.

41. Information taken by the Individual Defendants from Innerworkings constitutes trade secrets under the Illinois Trade Secrets Act ("ITSA").

42. These trade secrets include, but are not limited to: (i) customer contacts and sales information; (ii) purchasing and sales strategies; and (iii) pricing information and inventory costs.

43. Innerworkings invested substantial time and resources to generate information and data that the Individual Defendants stole from it. The information contained in these materials derives independent economic value by virtue of not being generally known to the public.

44. Innerworkings has kept this information sufficiently secret to give it a competitive advantage. It has taken affirmative measures to prevent other from acquiring it or using it by means including, but not limited to, requiring the Individual Defendants to agree and adhere to several policies in place at Innerworkings and maintaining security procedures to protect the trade secrets. Access to Innerworkings' systems, including employee computers, phones and

other devices is password protected, and certain databases are further limited and password protected as well. Innerworkings employees and contractors agree to a Computer Usage Policy in order to access Innerworkings' systems. Innerworkings and its service providers comply with the SOC 2 and ISO compliance standard with respect to certain of its systems as well. Moreover, Innerworkings requires confidentiality agreements with all its customers, suppliers, vendors, contractors and other third parties. Certain of Innerworkings' sales and marketing information and related documentation is marked confidential as well.

45. Innerworkings communicated its trade secrets to the Individual Defendants in confidence and those defendants knew that Innerworkings intended its trade secrets to remain confidential. As such, the Individual Defendants promised to keep Innerworkings' trade secrets confidential, to use Innerworkings' trade secrets only on behalf of Innerworkings, and to return and discontinue using Innerworkings' trade secrets when their employment with Innerworkings ended.

46. The Individual Defendants have misappropriated the trade secrets by improper acquisition, unauthorized disclosure, or unauthorized use.

47. Due to their positions working for a direct competitor of Innerworkings, and their possession of Innerworkings' trade secrets and proprietary information, there is a substantial likelihood that the Individual Defendants have disclosed or used, and will continue to use, Innerworkings' trade secrets.

48. As a direct and proximate result of the Individual Defendants' unlawful conduct, Innerworkings has been irreparably damaged and the Individual Defendants have been unjustly enriched. This unjust enrichment includes value attributable to the misappropriated information, amounts the Individual Defendants saved in costs and development by using the misappropriated

information, increased productivity resulting from the use of the misappropriated information and increased market share. The exact amount of these damages and unjust enrichment is not presently ascertainable, but is believed to be in excess of several millions of dollars and increasing each month.

49.     The acts described above constituted willful and malicious misappropriation in that the Individual Defendants stole an alarming amount of proprietary information and did so with the deliberate intent to injure Innerworkings' business and improve their own. Accordingly, Innerworkings is entitled to an award of reasonable attorneys' fees under 765 ILCS 1065/5(iii), exemplary damages under 765 ILCS 1065/4(b) and other remedies available under the ITSA.

50.     The Individual Defendants' conduct and continued use of Innerworkings' misappropriated trade secrets has caused, and unless enjoined by the Court, will continue to cause, great and irreparable injury to Innerworkings.

**WHEREFORE**, Innerworkings seeks a judgment in its favor and against defendants Sara Horn, William Thomas, Charles Dicker, Debbie Hokama, Lori Iwata, Raymond Evans, Edwin Shinsato, Clayton Ichikawa, Blake Stoll, and Patrick Bane, providing:

a.  Actual damages proximately caused by the Individual Defendants' misappropriation of trade secrets, including disgorgement of all ill-gotten gains and unjust enrichment, the exact amount to be proven at trial;

b.  Exemplary damages as a result of the Individual Defendants' willful and malicious misappropriation of trade secrets;

c.  Costs, including any forensic costs and reasonable attorneys' fees incurred by Innerworkings in bringing and prosecuting this action; and

d.  For any other and further relief that the Court may deem just and proper.

## COUNT III
### Breach of Contract - Confidentiality
### (Innerworkings v. Individual Defendants)

51.     Innerworkings incorporates the preceding allegations of this Complaint as if fully set forth herein.

52.     Innerworkings has performed all duties and obligations under the Employee Innovations + Proprietary Rights Policy.

53.     By committing the above-described acts, each of the foregoing defendants (the Individual Defendants) violated the Employee Innovations + Proprietary Rights Policy with Innerworkings. Their violations include, without limitation, violating their confidentiality covenants by using and disclosing Innerworkings' confidential information after their respective relationships with Innerworkings terminated.

54.     As a direct and proximate result of those breaches, Innerworkings has sustained damages and will incur further damages, including but not limited damages reflecting lost business, lost profits, and damages to its goodwill, in amounts to be proven at trial. Innerworkings has also suffered and will continue to suffer immediate and irreparable harm, and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.


**WHEREFORE**, Innerworkings seeks a judgment in its favor and against defendants Sara Horn, William Thomas, Charles Dicker, Debbie Hokama, Lori Iwata, Raymond Evans, Edwin Shinsato, Clayton Ichikawa, Blake Stoll, and Patrick Bane, providing:

     a.   Actual damages proximately caused by the Individual Defendants' breaches of the Employee Innovations + Proprietary Rights Policy, plus incidental and

consequential damages arising from said breaches, the exact amount to be proven at trial;

b.  Immediate injunctive relief and other equitable relief without bond; and

c.  Such further and additional relief as the Court deems just and proper.

## COUNT IV
### Breach of Contract - Non-Competition
### (Innerworkings v. Individual Defendants)

55.    Innerworkings incorporates the preceding allegations of this Complaint as if fully set forth herein.

56.    Innerworkings has performed all duties and obligations under the Employee Innovations + Proprietary Rights Policy.

57.    By committing the above-described acts, each of the foregoing defendants violated the Employee Innovations + Proprietary Rights Policy with Innerworkings. Their violations include, without limitation, violating their non-competition covenants by soliciting and selling to Innerworkings' Hawaii-based customers after their respective employment relationships with Innerworkings terminated.

58.    As a direct and proximate result of those breaches, Innerworkings has sustained and will incur further damages, including but not limited damages reflecting lost business, lost profits, and damages to its goodwill, in amounts to be proven at trial. Innerworkings has also suffered and will continue to suffer immediate and irreparable harm, and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

**WHEREFORE**, Innerworkings seeks a judgment in its favor and against defendants Sara Horn, William Thomas, Charles Dicker, Debbie Hokama, Lori Iwata, Raymond Evans, Edwin Shinsato, Clayton Ichikawa, Blake Stoll, and Patrick Bane, providing:

    a.  Actual damages proximately caused by the Individual Defendants' breaches of the Employee Innovations + Proprietary Rights Policy, plus incidental and consequential damages arising from said breaches, the exact amount to be proven at trial;

    b.  Immediate injunctive relief and other equitable relief without bond; and

    c.  Such further and additional relief as the Court deems just and proper.

## COUNT V
### Unjust Enrichment
### (Innerworkings v. Individual Defendants)

59.    Innerworkings incorporates the preceding allegations of this Complaint as if fully set forth herein.

60.    It would be inequitable and unjust for the Individual Defendants to retain without payment, the pecuniary benefits they have gained from their theft of Innerworkings' confidential information and their breaches of their confidentiality obligations and non-compete obligations in the Employee Innovations + Proprietary Rights Policy with Innerworkings.

61.    The Individual Defendants have been unjustly enriched and should be ordered to provide commensurate restitution to Innerworkings.

62.    As a result of the Individual Defendants' actions, Innerworkings has been damaged to an extent which currently cannot be calculated or ascertained but which includes lost profits, lost investment of money and resources, and ill-gotten profits the Individual Defendants derived from their theft of Innerworkings' confidential and proprietary information and their

numerous breaches of the Employee Innovations + Proprietary Rights Policy with Innerworkings.

63.     There is no justification for the Individual Defendants' enrichment at Innerworkings' expense, as the enrichment is derived from their use of Innerworkings' confidential and proprietary information and their breaches of the Employee Innovations + Proprietary Rights Policy.

**WHEREFORE**, Innerworkings seeks a judgment in its favor and against defendants Sara Horn, William Thomas, Charles Dicker, Debbie Hokama, Lori Iwata, Raymond Evans, Edwin Shinsato, Clayton Ichikawa, Blake Stoll, and Patrick Bane, providing:

   a.  Actual damages proximately caused by the Individual Defendants, including disgorgement of all ill-gotten gains and unjust enrichment; and

   b.  Such further and additional relief as the Court deems just and proper.

### COUNT VI
**Breach of Contract – Raiding, Non-Competition, and Non-Solicitation**
**(Innerworkings v. Sara Horn)**

64.     Innerworkings incorporates the preceding allegations of this Complaint as though fully alleged herein.

65.     While employed at Innerworkings, Ms. Horn entered into a Restricted Stock Unit Award Agreement and a Stock Option Agreement with Innerworkings.

66.     The Restricted Stock Unit Award Agreement as well as the Stock Option Agreement, provided, among other things, that for a period of eighteen (18) months following the termination of Ms. Horn's employment for any reason that she would: (i) not perform any services that are competitive with Innerworkings' business; (ii) not induce any customers or business relations of Innerworkings to cease doing business with Innerworkings, whether or not

she had personal contact with such customer; and (iii) not solicit, encourage, hire or take any other action that is intended to induce or encourage, or has the effect of inducing or encouraging, any employee or independent contractor of Innerworkings to terminate his or her employment or relationship with Innerworkings.

67.     Since leaving Innerworkings, Ms. Horn has been providing services at Smart Source that are directly competitive to Innerworkings. In addition, Ms. Horn orchestrated and encouraged Innerworkings' employees, including the other Individual Defendants, to cease working for Innerworkings and to work at Smart Source. Ms. Horn has further directly or indirectly solicited and encouraged Innerworkings' Hawaii-based customers to cease doing business with Innerworkings and to do business with Smart Source.

68.     Innerworkings has performed all duties and obligations under the Restricted Stock Unit Award Agreement and the Stock Option Agreement.

69.     By committing the above-described acts, Ms. Horn violated the Restricted Stock Unit Award Agreement and the Stock Option Agreement with Innerworkings. Her violations include, without limitation, violating the non-competition covenant, violating the non-solicitation covenant, and violating the non-poaching covenant after her employment relationship with Innerworkings terminated.

70.     As a direct and proximate result of those breaches, Innerworkings has sustained significant damages and will incur further damages, including but not limited damages reflecting lost business, lost profits, and damages to its goodwill, in amounts to be proven at trial. Innerworkings has also suffered and will continue to suffer immediate and irreparable harm, and will continue to suffer such injury until the breaches are preliminarily and permanently enjoined.

**WHEREFORE**, Innerworkings seeks a judgment in its favor and against defendant Sara

Horn providing:

    a. Actual damages proximately caused by defendant's breaches of the Restricted Stock unit Award Agreement and Stock Option Agreement, as well as incidental and consequential damages including disgorgement of all ill-gotten gains and unjust enrichment;

    b. Forfeiture of any restricted stock units, or alternatively, recovery of the economic value thereof;

    c. Immediate injunctive relief and other equitable relief without bond; and

    d. Such further and additional relief as the Court deems just and proper.

## COUNT VII
### Aiding and Abetting Breach of Contract, Violation of the Defend Trade Secrets Act and Violation of the Illinois Trade Secrets Act
### (Innerworkings v. Smart Source)

71.    Innerworkings incorporates the preceding allegations of this Complaint as if fully set forth herein.

72.    On or about March 3, 2020, Innerworkings sent cease and desist letters to defendants Sara Horn, Raymond Evans, Clayton Ichikawa, Lori Iwata, Edwin Shinsato, Debbie Hokama, Blake Stoll, Charles Dicker, and William Thomas.

73.    In response, on or about March 5, 2020, Smart Source sent a letter acknowledging that Smart Source's principals had turned over the cease and desist letters to Smart Source's legal counsel.

74.    In its letter, Smart Source rejected as "without merit" Innerworkings' contentions that Innerworkings' former employees – now working for Smart Source – were breaching their confidentiality and non-competition covenants, and that Smart Source would "continue to

operate business as it ordinarily does."

75.     Upon information and belief, since March 5, 2020, Smart Source has aided the Individual Defendants in breaching their confidentiality, non-solicitation, non-competition, and non-poaching covenants with Innerworkings by assisting in soliciting and procuring sales from Innerworkings' Hawaii-based customers, utilizing the Individual Defendants' knowledge of Innerworking' proprietary information to: (i) compete on price with Innerworkings; (ii) make contacts with Innerworkings' Hawaii-based customers, and (iii) target and recruit Innerworkings' employees for employment at Smart Source. Smart Source's wrongful acts in aiding the Individual Defendants to breach their contractual obligations with Innerworkings have caused damages to Innerworkings.

76.     Smart Source was aware of its role as a facilitator of wrongful conduct. Although Smart Source reviewed the cease and desist letters sent to certain Smart Source's employees (former Innerworkings' employees) detailing their wrongful conduct, Smart Source failed and refused to conduct its business any differently and instead continued to aid and abet the Individual Defendants' wrongful conduct.

77.     Smart Source has knowingly and substantially assisted the Individual Defendants in breaching their contractual obligations to Innerworkings, and in wrongfully utilizing Innerworkings' trade secrets in violation of the Defend Trade Secrets Act and the Illinois Trade Secrets Act.

78.     As a result of Smart Source's actions, Innerworkings has suffered damages, lost sales, and has been a victim of theft of its trade secrets and proprietary information. Smart Source has been unjustly enriched and has benefitted from assisting the Individual Defendants in the wrongful use and exploitation of Smart Source's proprietary information.

**WHEREFORE**, Innerworkings seeks a judgment in its favor and against defendant Smart Source, providing:

a.  Actual damages proximately caused by Smart Source for aiding and abetting breaches of the Employee Innovations + Proprietary Rights Policy and other contracts between Innerworkings and the Individual Defendants, plus incidental and consequential damages arising from said breaches, the exact amount to be proven at trial;

b.  Actual damages against Smart Source for aiding and abetting violations by the Individual Defendants of the Defend Trade Secrets Act and the Illinois Trade Secrets Act proximately caused by the Individual Defendants' misappropriation of trade secrets, including disgorgement of all ill-gotten gains and unjust enrichment, the exact amount to be proven at trial;

c.  Exemplary damages as a result of the willful and malicious misappropriation of trade secrets;

d.  Costs, including any forensic costs and reasonable attorneys' fees incurred by Innerworkings in bringing and prosecuting this action; and

e.  Such further and additional relief as the Court deems just and proper.

PLAINTIFF DEMANDS A TRIAL BY JURY

**Innerworkings, Inc.**

By:_____/s/ Jason M. Metnick_____
          One of Its Attorneys

Jason M. Metnick
Monica J. Paine
**MELTZER, PURTILL & STELLE LLC**
300 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 987-9900
jmetnick@mpslaw.com
mpaine@mpslaw.com